**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| EDWARD KRESS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALTERRA MOUNTAIN COMPANY U.S. INC.; IKON PASS, INC.; AND DOES ALTERRA 1 THROUGH 10, INCLUSIVE,<br><br>Defendants. | **Trial by Jury Demanded** |

**CLASS ACTION COMPLAINT**

Plaintiff Edward Kress ("Plaintiff"), brings this action against Defendants Alterra Mountain Company U.S. Inc. ("Alterra") and Ikon Pass, Inc. ("Ikon") (collectively, "Defendants"), by and through his attorneys, individually and on behalf of all others similarly situated, and alleges as follows based on information and belief except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

**INTRODUCTION**

1. Plaintiff brings this action on behalf of himself and all other similarly situated individuals who purchased Season Passes or Ikon Passes for the 2019-20 ski season (the "Class"). Class members were unable to use the remaining value in their passes after Alterra closed its ski resorts early due to the COVID-19 pandemic. Defendants have refused to refund Plaintiff and Class members for the unusable portion of the passes.

2. Activities such as skiing, snowboarding, and using lifts to access the ski and snowboard routes, are difficult to safely participate in while social distancing to help avoid

contracting the virus. Consequently, with nearly two months left in the ski season, Alterra closed its ski resorts on March 14, 2020.

3. By refusing to refund to customers the monies paid for passes they can no longer use – money that they need to provide for themselves and their families during the crisis – Defendants shifted the financial burden of the crisis onto Plaintiff and the Class who paid hundreds or thousands of dollars for lift tickets and passes to ski or snowboard at Alterra's resorts.

4. Defendants' conduct breaches their contract with passholders, is unfair, unlawful, and unconscionable, and unjustly enriches Defendants at the expense of their customers. Plaintiff brings this action in order to obtain partial refunds for all similarly situated customers that Defendants wronged by refusing to issue refunds for Season Passes and Ikon Passes with unused days when Alterra closed its resorts starting on March 15, 2020.

## JURISDICTION & VENUE

5. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendants because they are headquartered and/or have conducted substantial business in this judicial district, and intentionally and purposefully sold their season passes and Ikon Passes into the stream of commerce within this judicial district and throughout the United States.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, and are subject to personal jurisdiction in this district, and because a substantial part of the events giving rise to the claims in this action occurred in this district.

## PARTIES

8.      Plaintiff Edward Kress ("Plaintiff") is a citizen of the State of California, and at all times relevant to this action has resided in Berkeley, California.

9.      On April 21, 2019, Plaintiff purchased Ikon Base Passes for the 2019-2020 ski season for himself, wife, and daughter, which gave them unlimited access to 15 of Alterra's ski areas. Plaintiff purchased the Ikon Base Pass for himself for $619.00. His cost for his wife and daughter was $619.00 and $159.00, respectively. Plaintiff purchased the Ikon Base Passes because of and in reliance on the unlimited access he believed they provided.

10.     Plaintiff used his Ikon Base Passes at Alterra's ski areas during part of the 2019-2020 season and planned to use his Ikon Base Passes after March 15, 2020, but because of the suspension and closure of Alterra's ski areas, Plaintiff was not able to use the Ikon Base Passes for the 2019-2020 season after March 15, 2020. Even though Plaintiff was not able to use his Ikon Base Passes after March 15, 2020, when Defendants closed all of Alterra's ski areas and rendered the pass unusable, Defendants did not provide Plaintiff a refund of the unused portion of the Ikon Base Passes.

11.     Had Plaintiff known that the 2019-2020 season was going to end on March 15, 2020, he would either have not purchased the passes, or would not have paid the full purchase price for his passes.

3

12. Alterra Mountain Company U.S. Inc. is a Delaware corporation with its principal place of business located at 3501 Wazee Street, #400, Denver, Colorado 80216.

13. Ikon Pass, Inc. is a wholly-owned subsidiary of Alterra and operates as an alter ego of Alterra. Alterra sells its Ikon Passes in conjunction with Ikon Pass, Inc.

14. Alterra owns and operates "recreation, hospitality, real-estate development, food and beverage, and retail businesses." Specifically, Alterra operates 15 different ski areas across North America, including: Big Bear Mountain, June Mountain, Mammoth Mountain, and Squaw Valley Alpine Meadows in California; Steamboat and Winter Park in Colorado; Deer Valley and Solitude in Utah; Stratton and Sugarbush Resort in Vermont; Crystal Mountain in Washington; and Snowshoe Mountain in West Virginia. Alterra also operates two resorts in Canada, Blue Mountain and Tremblant and CMH Heli-Skiing & Summer Adventures in British Columbia.

15. The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

16. Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of Alterra at all relevant times.

17. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this

Complaint to "Alterra" or "Defendants" is also a reference to all Defendants sued as Does 1 through 10.

18. Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## GENERAL ALLEGATIONS

19. Individuals obtain access to Alterra's ski areas and facilities by purchasing either a lift ticket, a season pass or an Ikon Pass. In general, lift tickets and season passes may only be used for the ski area associated with the ticket or pass. Lift tickets provide access to the ski area for a specified amount of time, usually one to seven days, depending on the number of days purchased.

20. Defendants' season passes ("Season Passes") permit passholders unlimited access to specific ski areas all season long without any blackout dates.

21. Alterra and its wholly-owned subsidiary, Ikon Pass, Inc., sell the Ikon Pass, Ikon Base Pass, Ikon Base Pass Plus and Ikon Session Pass (collectively, "Ikon Passes") through the website ikonpass.com. At all relevant times, Ikon Pass, Inc. and Alterra operated in conjunction with each other and as a single entity. In purchasing Ikon Passes, individuals purchased formed a contract with Defendants. The Terms of Use on ikonpass.com link users to alterramtnco.com, a website owned and operated by Alterra. When Plaintiff and Class members purchased Ikon Passes they entered into an agreement with Alterra and Ikon Pass, Inc. such that the relationship between Ikon Pass, Inc. and Alterra was indistinguishable.

22. The website for Ikon Passes for the 2019-2020 season is no longer available, but information and pricing for the passes for the 2020-2021 season are substantially similar, if not identical, to those for the 2019-2020 season.

23. Defendants sell their Ikon Passes at a standard price of $999 for the Ikon Pass, $699 for the Ikon Base Pass, $849 for the Ikon Base Pass Plus, and $399 for the Ikon Session Pass 4-day.[1] Discounted rates are available for individuals renewing Ikon Passes and for students and military members.

24. The Ikon Pass[2] allows individuals "the most access and no blackout dates at 43 unique destinations worldwide," permits unlimited access to 15 different ski areas, and additional limited access to other participating ski areas and discounts on food, retail and lessons at select locations.

25. The Ikon Base Pass[3] is a more affordable pass with more limitations. The Ikon Base Pass still permits passholders unlimited access to 14 of Defendants' ski areas, with no blackout dates for six of those 14 ski areas. It provides the same features, benefits and access as the Ikon Pass as well as five days of access to both Jackson Hole and Aspen Snow Mass.

26. The Ikon Session Pass[4] provides access to 30 select ski areas on four different days. Passholders can select the specific ski areas and days to use the Ikon Session pass with a few blackout dates during which they cannot use the pass.

---

[1] *Shop Passes*, https://www.ikonpass.com/en/shop-passes (last visited June 2, 2020).
[2] *Ikon Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-pass-2020-2021 (last visited June 2, 2020).
[3] *Ikon Base Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-base-pass-2020-2021 (last visited June 2, 2020).
[4] *Ikon Session Pass Details*, https://www.ikonpass.com/en/shop-passes/ikon-session-pass-4-day-2020-2021 (last visited June 2, 2020).

6

27.     Defendants also offer the Ski Pass Preserver at checkout, a form of insurance that Defendants claim "offers the broadest limits."[5] Passholders who purchase Ski Pass Preserver will receive a refund of the cost of the Season Passes and Ikon Passes for covered events. The covered events are limited to the following situations: the passholder's or a family member's death, sickness or injury; the passholder's primary place of residence or destination is made uninhabitable and remains uninhabitable during the season pass coverage period, by fire, flood, or other natural disaster, vandalism, or burglary of the passholders' principle place of residence; the passholders' transfer of employment of 100 miles or more by the employer the passholder or their spouse are employed by, on the effective date, which requires the passholder's principal place of residence to be relocated; revocation of the passholder's previously granted military leave or re-assignment; or the passholder's pregnancy if the pregnancy occurs after the effective date for season pass cancelation.

28.     By April 2019 Defendants had sold more than 250,000 Ikon Passes, which exceeded their pre-season estimates.[6]

29.     Plaintiff and Class members purchased Ikon Passes from Defendants to access more than one of Alterra's ski areas for most of the year and the entire ski/snowboard season, which typically lasts around six months, from mid-October until June. Plaintiff and Class members also purchased Season Passes and Ikon Passes for the unlimited access the passes provide to Alterra's ski areas. Plaintiff and the Class benefit from the Season Passes and Ikon Passes because they

---

[5] *Ski Pass Preserver*, https://trippreserver.com/alterra-mountain-company/alterra-ikon-pass/ (last visited June 2, 2020).
[6] *See* Tim Sohn, *It Was a Huge Year for the Ski Pass Locals Love to Hate*, Bloomberg (April 15, 2019), available at: https://www.bloomberg.com/news/articles/2019-04-15/it-was-a-huge-year-for-ikon-the-ski-pass-locals-love-to-hate.

7

receive a discount for the increased and usually unlimited access to the ski areas when compared to having to buy individual lift tickets each time they visit a ski area.

30. The benefits Plaintiff and Class members received from Season Passes and Ikon Passes are effectively the same regardless of the type of Season Passes or Ikon Passes they purchased, such that passholders of Season Passes and Ikon Passes have been treated similarly by Defendants and suffered substantially similar damages and harm from Defendants' actions.

31. COVID-19 spreads through communities without detection. On February 29, 2020 the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks. On March 11, 2020, the World Health Organization classified COVID-19 as a worldwide pandemic and, two days later, the President declared a "National Emergency."

32. On March 11, 2020, in response to the COVID-19 pandemic, Jared Polis, Governor of Colorado, issued Executive Order D 2020 003, which declared COVID-19 a disaster emergency. On March 14, 2020, Governor Polis issued Executive Order D 2020 004, which directed all downhill ski resorts in the State of Colorado to suspend operations from March 15-22, 2020. On March 18, 2020, Governor Polis issued Executive Order D 2020 006, which ordered all downhill ski resorts to suspend operations from March 23-April 6, 2020, which was later extended to April 30, 2020. On March 25, 2020, Governor Polis issued Executive Order D 2020 017, which ordered all residents of Colorado to stay at home.

33. As COVID-19 spread across the United States, reports linked the spread of the disease to ski resorts around the country, especially the resorts in Colorado.[7] Recognizing the

---

[7] *See e.g.*, Vincent Del Giudice, *Colorado Suspects Virus Cluster in Ski-Resort Region*, Bloomberg (Mar. 16, 2020), https://www.bloomberg.com/news/articles/2020-03-17/colorado-suspects-virus-cluster-in-ski-resort-region-of-state (updated Mar. 17, 2020).

8

coming wave of closures and stay-at-home orders affecting Alterra's ski areas, on March 14, 2020, Rusty Gregory, chief executive officer for Alterra, issued the Alterra Mountain Company Closure Announcement, suspending operations at all 15 of Defendants' ski areas beginning on March 15, 2020.

34. In the Closure Announcement, Defendants claimed that they would "provide refunds or credits to those who have hotel and other bookings during this closure period." However, since closing all of their resorts, for which passholders were promised unlimited access, Defendants have refused to provide refunds of any portion of the money passholders paid to purchase Season Passes and Ikon Passes for the 2019-2020 ski season.

35. Because Defendants refused to provide refunds for individuals who purchased any Season Passes or Ikon Passes with unused days, many consumers made claims on their Ski Pass Preserver or pass insurance, seeking partial refunds due to the closure of Alterra's ski areas. However, passholders' claims under the Ski Pass Preserver policies have been denied.[8]

36. Instead of refunding Plaintiff and Class members for the unused value of the Season Passes and Ikon Passes due to the resort closures, Defendants have only offered a $200 discount for pass renewals for Plaintiff and Class members who purchase Ikon Passes for the 2020/2021 ski season.

37. Defendants' offered discount requires Plaintiff and Class members to pay Defendants even more money and is not a substitute for the partial refund Defendants should be providing Plaintiff and Class members. Such a discount fails to ameliorate the financial difficulty

---

[8] *See e.g.*, *Travel Insurance, Ski Pass Insurance Will they Pay for COVID-19 Claims?*, MidJersey.News (April 7, 2020) https://midjersey.news/2020/04/07/travel-insurance-ski-pass-insurance-will-they-pay-for-covid-19-claims/ (last visited June 2, 2020).

9

imposed upon Plaintiff and Class members by the COVID-19 pandemic, or rightfully compensate Plaintiff and Class members for the lost value of their unusable passes.

38. Any claims by Defendants that they should not have to provide partial refunds to Plaintiff and Class members are unconscionable and unfair.  There are no contract provisions or disclaimers that allows Defendants to retain the monies attributable to the remainder of the 2019-20 season.

39. The back of the physical Ikon Passes states that "NO REFUNDS/NON-TRANSFERABLE/ILLEGAL TO RESELL/PERSONAL USE ONLY."  This language fails to appropriately address the circumstances at issue here.  While it informs consumers that they may not change their minds, or sell or share their passes, it does not inform them that Defendants will not provide refunds when Alterra closes its ski areas and passholders are wholly unable to use their passes.

40. Nothing in Defendants' Terms of Use for the Ikon Passes and Season Passes establishes that Defendants may refuse to refund Plaintiff and Class members for preventing the promised unlimited access to their ski areas.[9]  The Terms of Use only explain, under the "Passholder Transactions and Force Majeure" heading, that "[w]hile the products and services may have certain access rights, this does not guarantee access will be available to [passholders] at all times where circumstances occur that are beyond [Defendants'] control or that require us to limit access to our resorts for safety or other reasons." Nor does the provision or the Terms of Use explain that passholders will not be provided a refund or partial refund in the event of a complete closure of Alterra's ski areas for extended periods.

---

[9] *See* Defendants' Terms of Use, attached as **Exhibit A**.

10

41. The Terms of Use for all of Defendants' websites and passes provide that the use of the website and their passes is governed by the laws of the State of Colorado, and any legal proceedings against Defendants shall be commenced in state or federal court in Denver, Colorado.

42. Defendants' Ikon Pass website contains an Ikon Pass Payment Plan and Cancellation Policy, but it only applies to passes for the 2020-21 season that individuals purchased with a payment plan. Nothing in the Payment Plan and Cancellation Policy explains that Defendants need not refund passholders' monies for passes for the curtailed 2019-20 season.[10]

43. Defendants have newly instituted an "Adventure Assurance" program. The program allows holders of Ikon Passes for the 2020-21 season to defer the passes until the 2021-22 season, if they elect to do so between September 10, 2020 and December 10, 2020.[11] The Adventure Assurance program available to future purchasers highlights the inequity of Defendants' failure to offer refunds to Plaintiff and the Class for current Season Passes and Ikon Passes, and completely fails to compensate Plaintiff and the Class for the losses they sustained because of Defendants' refusal to offer refunds for the remainder of the 2019-2020 season.

44. No Season Pass or Ikon Pass passholder is bound by Defendants' attempts to limit their liability for closing their ski areas. Even if Defendants' limitation of liability applied by its terms—it does not—Defendants cannot disclaim liability for loss or damage by closing Alterra's ski areas and preventing consumers from being able to use the Season Passes or Ikon Passes, without any compensation for the unused portion of the passes. Any attempt by Defendants to limit or disclaim liability for preventing passholders from using the Season Passes or Ikon Passes, while retaining the fees that passholders paid to purchase the Season Passes or Ikon Passes, is unconscionable and unenforceable, and unjustly enriches Defendants.

---

[10] *See* Payment Plan and Cancellation Policy, attached as **Exhibit B**.
[11] *Community Gratitude*, https://www.ikonpass.com/en/community (last visited June 2, 2020).

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

45. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

46. Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), defined as follows:

> All persons in the United States who purchased a 2019-2020 Season Pass to any of Defendants' resorts, 2019-2020 Ikon Pass, 2019-2020 Ikon Base Pass, 2019-2020 Ikon Base Pass Plus, or 2019-2020 Ikon Session Pass that had unused days after March 15, 2020 (the "Class").

47. Excluded from the Class are: (a) Defendant; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

48. **Numerosity**: As required by Fed. R. Civ. P. 23(a)(1), upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis alleges, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on Defendants' records.

49. **Commonality**: As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Class, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

   a. Whether Defendants are required to provide partial refunds to Plaintiff and Class members who purchased Season Passes or Ikon Passes;

   b. Whether Defendants breached their contracts with Plaintiff and Class members;

   c. Whether Defendants were unjustly enriched by their conduct;

12

      d.   Whether Defendants breached their implied and express warranties; and

      e.   Whether Defendants violated the Colorado Consumer Fraud Act.

50.   **Typicality**: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out Defendants' uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

51.   **Adequacy**: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

52.   **Superiority**:  As required by Fed. R. Civ. P. 23(b)(3), a class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly situated individuals.  By contrast, the Class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Breach of Contract**

53. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

54. Plaintiff and the Class entered into a contract with Defendants when purchasing Season Passes or Ikon Passes. The contract was offered by Defendants and was formed at the time Plaintiff and the Class accepted it by purchasing their Season Passes or Ikon Passes.

55. Plaintiff and the Class performed their obligations under the contract by providing payment in consideration for the Season Passes or Ikon Passes.

56. Defendants breached their contracts with Plaintiff and the Class by retaining the consideration received by Plaintiff and the Class while closing their ski resorts, making the Season Passes and Ikon Passes useless for a substantial portion of the ski season. Defendants' decision to retain the fees paid by Plaintiff and the Class without providing them with what was promised deprived Plaintiff and the Class the benefit of their bargains.

57. Due to the closure of Defendants' ski areas for a substantial portion of the 2019-2020 season, Defendants are unable to perform the remainder of the contract. Defendants' closure of all of their ski areas for the remainder of the 2019-20 ski season, while a substantial portion of the ski season remained, renders Defendants' representations that it will not provide refunds for Season Passes or Ikon Passes illusory and void.

58. As a direct and proximate result of Defendants' breach, Plaintiff and the Class have suffered monetary damages. Plaintiff and the Class seek the return of amounts paid to Defendants for their Season Passes or Ikon Passes, as well as attorneys' fees, costs and interest.

## SECOND CLAIM FOR RELIEF
**Unjust Enrichment**
**(Plead in the alternative to the First Claim for Relief for Breach of Contract)**

59. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

14

60. Plaintiff and the Class conferred a direct benefit on Defendants by purchasing Season Passes or Ikon Passes.

61. Defendants knowingly and willingly accepted and enjoyed the benefits conferred on them by Plaintiff and the Class.

62. Defendants' retention of these benefits is unjust and inequitable under the circumstances. As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and the Class are entitled to recover the amount each paid to Defendants for their Season Passes or Ikon Passes, as well as attorneys' fees, costs and interest.

### THIRD CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing

63. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

64. Every contract in Colorado contains an implied covenant of good faith and fair dealing. The implied covenant is an independent duty and may be breached even if there is no breach of a contract's express terms.

65. Defendants breached the covenant of good faith and fair dealing by failing to partially refund Plaintiff and the Class for the purchase price of their Season Passes, or Ikon Passes after Defendants terminated access to their ski areas. Defendants acted in bad faith and/or with a malicious motive to deny Plaintiff and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### Conversion

66. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

67. Plaintiff and the Class purchased Season Passes or Ikon Passes that granted them the right to services that were promised in exchange for the purchase price of the passes. Defendants intentionally interfered with Plaintiff's and the Class' rights granted through those

passes when Defendants closed all of their ski areas and retained the full purchase price of the passes.

68. Defendants exercised control over Plaintiff's and Class members' property by closing all of their ski areas and refusing to issue partial refunds for the unusable portion of the 2019-2020 Season Passes and Ikon Passes, and the rights granted by those passes.

69. Plaintiff and Class members have, through the filing of this lawsuit or otherwise communicating with Defendant, demanded that Defendants issue refunds for the unusable portion of the 2019-2020 Season Passes or Ikon Passes.

70. Defendants have uniformly and consistently refused to issue refunds for the unusable portion of the 2019-20 Season Passes or Ikon Passes. Defendants' closure of their ski areas and refusal to refund the unusable portion of the 2019-2020 Season Passes or Ikon Passes to Plaintiff and Class members is unauthorized.

71. Plaintiff and the Class seek a partial return of the price paid to Defendants for their Season Passes or Ikon Passes.

## FIFTH CLAIM FOR RELIEF
### Breach of Warranty

72. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

73. Defendants created an express warranty through their advertising statements that the Season Passes and Ikon Passes would provide "unlimited access" to their resorts through the 2019-2020 season. This warranty became part of the basis of the bargain between Plaintiff and the Class and Defendants. Plaintiff and the Class relied on this warranty in deciding to purchase a pass from Defendants.

74. Defendants breached this warranty by failing to provide unlimited access to their ski areas throughout the 2020 ski season and by failing to issue partial refunds to Plaintiff and the Class after shutting down access to their facilities.

75. Plaintiff and the Class would not have purchased the Season Passes or Ikon Passes, or would have paid substantially less, had Defendants disclosed that they would not honor the warranty and not refund Plaintiff and Class members any portion of the purchase price for the passes.

76. Plaintiff and the Class performed their obligations under the warranty, including paying in full for their passes.

77. Plaintiff and the Class were injured as a direct and proximate result of Defendants' breach of warranty.

**SIXTH CLAIM FOR RELIEF**
**Violations of the Colorado Consumer Protection Act[12]**

78. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

79. Colorado's Consumer Protection Act (the "CCPA") prohibits a person from engaging in a "deceptive trade practice," which includes "advertis[ing] goods, services, or property with intent not to sell them as advertised." Colo. Rev. Stat. § 6-1-105(1)(g), (i).

80. Defendants both are a "person" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

81. In the course of Defendants' business, they advertised that the purchasers of their Season Passes or Ikon Passes would have unlimited access to skiing and snowboarding until end of the 2019-2020 season, which typically lasts until May or June. Defendants knew, however, that

---

[12] Plaintiff does not seek certification under Federal Rule of Civil Procedure 23(b)(3) for Defendants' violation of the CCPA, instead Plaintiff seeks certification under Rule 23(b)(2)—seeking declaratory relief—and Rule 23(c)(4) regarding the issue whether Defendants conduct alleged herein violates the CCPA.

if they closed all of their resorts before the end of June 2020 that they would retain 100% of the revenue generated from sales of the passes.

82. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

83. Defendants' actions proximately caused injuries to Plaintiff and Class members.

84. Plaintiff and Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their passes, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendants with respect to their ability to access Defendants' ski areas without restriction. Had Plaintiff and the other Class members known this, they would either not have purchased their passes or paid less for them. Accordingly, Plaintiff and the other Class members overpaid for their passes and did not receive the benefit of their bargain.

85. Plaintiff and the Class Members injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

(a) Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

(b) Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

(c) Award actual damages and equitable monetary relief to Plaintiff and the Class and/or order Defendants to return to Plaintiff and the Class the amount each paid to Defendants;

(d) Award pre-judgment and post-judgment interest on such monetary relief;

(e) Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to issue refunds to any member of the Class who requests a refund;

(f) Award reasonable attorneys' fees and costs;

(g) Grant leave to amend the Complaint to conform to the evidence produced at trial; and

(h) Grant such further relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial by jury as to all claims so triable.

Dated: June 2, 2020

Respectfully submitted,

**POMERANTZ LLP**

By: */s/ Jordan L. Lurie*
Jordan L. Lurie (Admitted to Colorado Bar)
**POMERANTZ LLP**
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492
jllurie@pomlaw.com

Attorneys for the Plaintiff and the Putative Class